UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DIGITAL VENDING SERVICES INTERNATIONAL, INC.,

        Plaintiff,

v.                                                     ACTION NO. 2:09cv555

THE UNIVERSITY OF PHOENIX, INC., et al,

        Defendants.

**OPINION & ORDER**

On February 25, 2013, the Court held a hearing on the Defendants' Accounting of Attorneys' Fees (ECF No. 551) that the Court awarded with regards to Defendants' Motion to Compel Production of Documents Withheld as Privileged, *see* ECF No. 547 (Court's Order), and on Plaintiff's Motion regarding the Court's December 20, 2012 order (ECF No. 570). Michael Adams, Esq., William Parrish, Esq., and Taylor Chapman, Esq., represented Plaintiff, Digitial Vending Services International, Inc. (hereinafter "Plaintiff" or "DVSI"). Michael Nadel, Esq., Rebecca Watson, Esq., and Robert McFarland, Esq., represented Defendants. Tami Tichenor was the official court reporter.

For the reasons stated below, the Court AWARDS Defendants $22,316.87 in attorneys' fees and costs, and the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to claw-back email communications that were forwarded to General Mac McKnight.

**I. Procedural History**

Both issues before the Court stem from the same discovery dispute. As part of supplemental discovery, the parties conducted a "refresh" of email communications related to the

case using agreed upon search terms. On September 5, 2012, Defendants' filed a Motion to compel the production of a log of email communications collected as part of this "refresh" that Plaintiff considered privileged. Defs.' Mem. Supp. Mot. to Quash 1 (ECF No. 504). The refreshed documents addressed by the motion were restricted to email communications to and/or from Mr. Samuel D. Wyman III and Mr. Jeffrey J. Josephs, the managing directors for DVSI. *Id.* The Court granted that Motion. ECF No. 517. At that hearing, Plaintiff represented to the Court that approximately 1178 documents existed that were not exempted by the Court's order.

One month later, Defendants filed a Motion to Compel Production of Documents Withheld as Privileged. ECF No. 530. The Motion was filed after Plaintiff's privilege log included only ninety documents, rather than the approximately 1178 documents Plaintiff's counsel represented to the Court. *See* Def's. Mem. in Supp. of Mot. to Compel Produc. 2 (ECF No. 531). Plaintiff withheld the remaining documents from the privilege log on the grounds of relevancy. *See* Pl's. Opp. to Defs.' Mot. to Compel Produc. 6 (ECF No. 537). In their motion, Defendants' requested that the Court compel production of all documents from the refresh that were being withheld as privileged, except those records included in Plaintiff's initial privilege log and those records exempted by the Court's October 18, 2012 Order. Def's. Mem. in Supp. of Mot. to Compel Produc. 1 (ECF No. 531). Additionally, Defendants' asked the Court to award attorneys' fees and costs expended on their Motion to Compel. The Court granted Defendants' Motion and ordered Defendants to file an accounting of attorneys' fees. ECF No. 547.

On December 21, 2012, Plaintiff filed objections to the Court's ruling compelling discovery with the District Judge. ECF No. 558. The District Judge overruled Plaintiff's objections on January 22, 2013. ECF No. 575.

At this point, the procedural histories of the two issues before the Court diverge. On the

2

issue of attorneys' fees, Defendants properly filed an accounting of attorneys' fees on December 21, 2012. ECF No. 551. Plaintiff responded to that accounting on December 28, 2012, (ECF No. 561), and Defendants filed their reply on December 31, 2012. (ECF No. 565). Therefore, that issue is fully briefed and ripe for decision.

The second issue, the clawing back of certain email communications, arose following the Court's order compelling production. On December 19, 2012, Plaintiff sought a clarification to the Court's order compelling production. ECF No. 548. The Motion for Clarification sought to clarify whether certain email communications had to be produced or whether those communications were protected by attorney-client privilege. As part of its Motion, Plaintiff sought to protect email communications sent by counsel of record to the client that were then forward onto "other DVSI board members or members." Pl.'s Mem. in Supp. of Mot. for Clarification 3 (ECF No. 549). As Plaintiff did not identify those individuals who were DVSI "members" or provide any information on who would be considered a DVSI member, the Court refused to grant a blanket exemption for email communications sent to DVSI members who were not part of the Board of Directors. ECF No. 550. In the December 20, 2012 Order, the Court stated, "The plaintiff may believe that communications sent to these members are protected by the attorney-client privilege under the factors laid out in the *Upjohn* Test. *Upjohn v. United States*, 449 U.S. 383 (1981). To protect those communications, additional briefing will be required." ECF No. 550.

On January 11, 2013, Plaintiff submitted additional briefing seeking to protect email communications that had been forwarded to three DVSI members; General Clarence "Mac" McKnight, Vincent Durago, and Christopher Jenkins. Resp. to Magistrate Judge's December 20, 2013 Order 3 (ECF No. 570). At oral argument, Plaintiff withdrew its request as to Mr. Durago and Mr. Jenkins, therefore, narrowing the issue to whether email communications forwarded to

3

General McKnight are protected by privilege. Defendants responded to Plaintiff's argument on Janurary 17, 2013, (ECF No. 574), and Plaintiff filed its reply on January 23, 2013, (ECF No. 576). As the issue has been fully briefed and oral argument has been heard, it is ripe for decision.

## II. Attorneys' Fees

In their accounting of attorneys' fees, Defendants seek $26,807.26. This figure is based on declarations by Michael Nadel, Esq., and Rebecca Watson, Esq. (ECF Nos. 551-1 & 551-2). Mr. Nadel spent a total of 42.5 hours on the Motion to Compel and incurred expenses of $419.01. Mr. Nadel's hourly billing rate was $493.50. Defs.' Accounting of Attorneys' Fees 1-2 (ECF No. 551). Ms. Watson billed 13.0 hours on the Motion to Compel and her hourly billing rate was $416.50. *Id.* On the day on which the Motion to Compel was heard at oral argument, a separate motion for leave to take two depositions was also heard. ECF No. 526.

Plaintiff does not argue that the fees were unreasonable, but instead argues that Defendants are not entitled to fees, or in the alternative, that Defendants were not sufficiently specific in their accounting of fees. Pl.'s Resp. to Defs.' Accounting of Attorneys' Fees 2-5 (ECF No. 561). Specifically, Plaintiff argues the sanction of attorneys' fees would be unjust because the Court already sanctioned Plaintiff by requiring the production of the documents in question. *Id.* Further, Plaintiff contends Defendants did not parse out those expenses made for the Motion to Compel and for the Motion for Leave to take Depositions. *Id.*

The Court disagrees with Plaintiff and finds that attorneys' fees are appropriate in this case and that such an award is not unjust. The Court bases this finding on the fact that Plaintiff has continually dragged its feet during this discovery dispute, and has misrepresented, to both the Court and Defendants, the amount of documents subject to the Court's original order. Plaintiff's action in this discovery dispute borders on bad faith, and a sanction of attorneys' fees and costs is

4

appropriate.

Although Plaintiff does not challenge the reasonableness of Defendants' fees, the Court must take care and determine that the fees are reasonable. In deciding whether the attorneys' fees to be awarded are reasonable, the Court considers and weighs the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) as adopted by *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978).[1] However, "there is no strict manner in which the factors are to be considered and applied." *Trimper v. City of Norfolk, Va.*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994), *aff'd*, 58 F.3d 68 (4th Cir. 1995). Based on the Court's experience in similar cases and the affidavits from Mr. Nadel and Ms. Watson, and in considering the twelve factors, the Court concludes that the billing rates and most of the hours claimed are reasonable.

The Court finds it unreasonable to award the full amount of counsel's time for travel and costs related to attending the motion's hearing because counsel had to argue an unrelated motion at the same hearing. Therefore, the Court reduces by half the time Mr. Nadel spent on December 13, 2012 preparing and traveling to the hearing, and the time spent on December 14, 2012 preparing for the hearing, attending the hearing and driving home. *See* Nadel Decl. (ECF No. 551-1). The Court also reduces by half Mr. Nadel's travel expenses incurring in attending the court hearing. Based on Mr. Nadel's affidavit, this means that his time will be reduced by 8.25 hours total, which reduces Mr. Nadel's fees by $4,071.38, and his travel costs will be reduced from $419.01 to

---

[1] The factors identified in *Johnson* are as follows: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Johnson*, 488 F.2d at 717-19.

$209.50.

Based on these reductions, the Court AWAR DS Defendants' $22,316.87 in attorneys' fees and associated expenses.

### III. Emails Forwarded to General McKnight

In its original response to the Court's December 20, 2012 Order, Plaintiff sought to claw-back email communications between counsel and Vincent Durago, Christopher Jenkins and General (ret.) Clarence "Mac" McKnight, three DVSI members who are not part of the Board of Directors. Resp. to Magistrate Judge's Dec. 20, 2012 Order 4. Further, Plaintiff sought a quasi-advisory opinion regarding future communications between DVSI's counsel and members. However, at oral argument, Plaintiff withdrew its request to protect email communications that were forwarded to Mr. Durago and Mr. Jenkins, and withdrew its request for an advisory opinion.

In this posture, the question before the Court is whether Plaintiff can claw-back email communications that were produced pursuant this Court's December 17, 2012 and December 20, 2012 Orders (ECF Nos. 547 & 550) and were sent from counsel of record to DVSI's principals, and that the principals then forwarded to DVSI's Board of Directors and General McKnight. Whether Plaintiff can claw back these email communications turns on whether Plaintiff waived attorney-client privilege by forwarding these email communications to General McKnight.

**A. Facts**

Before examining the arguments on each side, a brief recitation of the facts surrounding General McKnight is required. The briefs filed by Plaintiff do not give a full picture of General McKnight's involvement in DVSI. At oral argument, Plaintiff supplemented its briefing with a number of important facts.

As the Court understands Plaintiff's position, General McKnight is currently an investor in

DVSI, and sits on CLIN Inc.'s Board of Directors. Resp. to Magistrate Judge's December 20, 2012 Order 4. CLIN Inc. was DVSI's corporate predecessor and is also a member of DVSI. *Id.* at 3-4. Although General McKnight does not currently sit on DVSI's Board of Directors, he was on the Board of Directors and was part of DVSI/CLIN during its formation. General McKnight resigned from DVSI's Board of Directors sometime before the present litigation commenced because he was joining CLIN's Board and wanted to avoid a conflict of interest. However, Plaintiff's counsel represented to the Court that General McKnight was a sort of "ex-officio" member of the Board and a person whose institutional knowledge was valuable to the Board of Directors and whose advice was sought often. As Plaintiff's counsel put it, currently General McKnight is not a Board member or an employee, but an advisor.

On the other hand in his deposition, General McKnight seemed to degrade his involvement in DVSI as he stated "I'm not privy to all the—the management of the directors and so forth." McKnight Deposition 31:21-32.3 (ECF No. 574-1). He also characterized his work with CLIN as being a "figurehead." *Id.* at 21:12-13.

**B. Analysis**

In its research, the Court found no cases on point to answer the question of whether attorney-client privilege was waived when communications from an attorney, rendering legal advice, were conveyed to the client and the client then conveyed that information to both current members of the Board of Directors and to a former member of the company's Board of Directors. Before reaching the issue of whether Plaintiff waived privilege by forwarding these emails to General McKnight, the Court must examine whether the email communications in question are communications that include protected material.

### 1. Whether the Contents of Communications Are Privileged

As Defendants note, the communications sought flowed from counsel to the client and were then sent to others, including General McKnight. The Fourth Circuit has held that the attorney-client privilege applies not only to the upward flow of information from a client or client's representative to counsel, but also can apply to the downward flow of legal advice from counsel to client in limited circumstances. *See e.g., Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999); *United States v. (Under Seal)*, 748 F.2d 871, 874-877 (4th Cir. 1984) (applying privilege to communications from an attorney to a client that included client communications).

To determine whether the communications in question are protected under the Fourth Circuit's rule, the Court ordered Plaintiff to produce those email communications it wished to claw-back for an *in camera* review. ECF No. 609. In the Fourth Circuit, the attorney-client privilege may be extended to apply to communications made by counsel to the client, which either "reveal confidential client communications," *U.S. v. (Under Seal)*, 748 F.2d 871, 874 (4th Cir. 1984), or "reveal the motive of the client in seeking representation, litigation strategy or the specific nature of the services provided." *Chaudhry*, 174 F.3d at 402.

In reviewing the email communications Plaintiff wishes to claw-back, the Court finds that a number of the email chains do not include protected communications. Therefore, the following email communications are not privileged and cannot be clawed-back.

**(a) DVSI117777-DVSI117779, DVSI118503-DVSI118504, DVSI119382-DVSI119384, DVSI121702-DVSI121703.**

This chain starts with an email from counsel with a link to a story on the Federal Circuit's opinion in this case. Although the email was sent from counsel, nothing in counsel's communication deals with motives, strategy or the nature of services provided. Therefore, this

communication is not protected by attorney-client privilege.

**(b) DVSI119167-DVSI119174, DVSI120075-DVSI230081, DVSI120350-DVSI120357**

This email chain does not include any communications with General McKnight, therefore, it is out of the scope of Plaintiff's request and is not protected from the Court's previous orders.[2]

**(c) DVSI122702-DVSI122705**

This email chain deals with negotiations between Plaintiff and a previously retained expert, Dr. Stuart Stubblebine, over a bill dispute. The email chain begins with email communications between DVSI counsel and counsel for Dr. Stubblebine, which are then forwarded to a number of DVSI related individuals, including General McKnight. The only communications from counsel to DVSI are two emails from Andrew DiNovo. These emails only ask the client whether the proposed solution is acceptable. Because the communications from counsel to client do not deal with strategy or motives, and do no more than ask the client if a settlement is acceptable, these email communications are not protected.

**(d) DVSI122879-DVSI122880**

This email chain is not protected because it deals with rescheduling oral argument before the Federal Circuit. Scheduling matters do not amount to legal advice and do not deal with strategy or motives. Therefore, the content of this chain is not protected by attorney-client privilege.

**(e) DVSI122885-122886, DVSI123107-123108, DVSI123116-DVSI123117**

This email chain discusses the status of Plaintiff's preparation for oral argument before the Federal Circuit. These communications are simply status updates and no legal advice is given by

---

[2] After sending the Court those email communications it wished to be clawed-back, Plaintiff contacted the Court and withdrew its request as to DVSI119167-DVSI119173. Since the Court's ruling applies to more than just those email communications, the Court went ahead and ruled on all of the emails in that particular email chain.

counsel. Therefore, these communications are not privileged.[3]

**(f) DVSI122895-DVSI122896, DVSI123347-DVSI123352**

In this email chain, counsel alerts DVSI to other cases decided by the Federal Circuit on issues similar to those presented by this case. These communications appear to come after oral argument, and counsel does no more than advise the client that the Federal Circuit has ruled in their favor on similar issues. There is no legal advice, no discussion of strategy, and no revealing of client's motives or information. This advisory email communication from counsel is not protected.

**(g) DVSI122806-DVSI122808**

This email chain discusses a number of billing related issues; however, the only communication from counsel discusses the deadlines set for Plaintiff's briefing schedule in its Federal Circuit appeal. The counsel's communication is no more than relaying a schedule to the client and is not privileged information.

**(h) DVSI122902-DVSI122904, DVSI123173-DVSI123175**

This email chain includes a discussion about the result of the Federal Circuit's opinion, but the only communication from DVSI counsel is one that informs DVSI that it had prevailed on part of its appeal. This alert does not amount to confidential communications and is not privileged.

**(i) DVSI120384-DVSI120385**

This email chain includes communications regarding travel and setting a moot court for Plaintiff's argument at the Federal Circuit. Counsel's communication is no more than a status update and is not privileged.[4]

---

[3] This email chain appears to have "DVSI Argument Key Points Outline.doc" attached to these communications. This attachment was not produced for the Court's review *in camera*. The Court is not aware whether Plaintiff produced this document in discovery. Regardless, as it has not been produced for an *in camera* review, unless it appears on a privilege log, the document is not protected from the Court's previous orders.
[4] This email chain appears to include an attachment "Correspondence-Jan Horbaly-10-27-2011.pdf." It was not

10

The discussed email communications are not protected because the content does not fit into situations proscribed by the Fourth Circuit for when counsel to client communication is privileged. Therefore, the Court DENIES Plaintiff's Motion with regards to these listed email communications.

For the remaining communications provided to the Court for an in camera review, the Court must decide whether the privilege was waived for the remaining communications when the email communications were forwarded to General McKnight.

### 2. Overview of Attorney-Client Privilege in Corporate Context

The attorney-client privilege is grounded in Federal Rule of Evidence 501. The Rule states that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" unless either the Constitution, statute or federal rule provides otherwise. Fed. R. Evid. 501. The Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), interprets this Rule in the corporate context and provides an important starting point for the Court's analysis.

In *Upjohn*, the Court expressly rejected the "control-group test" for determining which corporate agents were protected under the umbrella of attorney-client privilege. *Id.* at 390. *Upjohn* sought to put the courts more in line with the spirit of Rule 501, by instructing courts to do a case by case analysis of the legally relevant facts. *Id.* at 390-391, 396-397 (citing S. Rep. No. 93-1277, p. 13 (1974)). The Court noted that the Rule's "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389. The Court expressed as a policy

---

produced for the Court's *in camera* review and the Court is unaware if it has been turned over in discovery. Regardless, unless it is on a privilege log, this document is not protected by the Court's previous orders.

concern that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390.

The majority's opinion in *Upjohn* is silent on whether this analysis applies to individuals who are not current employees. In particular, the *Upjohn* majority left open the question of whether a former employee's or agent's communications would fall under the protection of attorney-client privilege for the corporate entity. *See id.* at 396 (discussing that the Court only decides the case before it). In his concurring opinion, however, Chief Justice Burger stated his view that "the Court should make clear now that, as a general rule, a communication is privileged at least when, as here, an employee or former employee speaks at the direction of the management with an attorney regarding conduct or proposed conducted within the scope of employment." *Id.* at 402-403 (C.J. Burger, concurring).

The Fourth Circuit has adopted Chief Justice Burger's concurrence. In its decision in *In re Allen*, 106 F.3d 583 (1997), the Fourth Circuit held "that the analysis applied by the Supreme Court in *Upjohn* to determine which employees fall within the scope of the privilege applies equally to former employees." *Id.* at 606.[5] Beyond the issue of current and former employees, courts have applied *Upjohn* with varying outcomes to a variety of corporate relationships.

---

[5] In *Allen*, the Attorney General of West Virginia had hired an independent consultant, Barbara Allen, Esq., to render legal advice and conduct an investigation on "a situation of possible document mismanagement and confidentiality/security breaches." *Id.* at 598 (quoting letter memorializing agreement to retain services of Allen). During the course of her investigation, Allen interviewed Fran Hughes, the *former* Chief Deputy Attorney General of West Virginia. *Id.* Hughes had served during the time period relevant to Allen's investigation and had relevant information for Allen's investigation and Allen interviewed Hughes at the direction of Attorney General. *Id.* at 606. The Fourth Circuit found that "Allen needed the information that Hughes could provide in order to develop her legal analysis for her client." *Id.*

**(3) Waiver of Attorney-Client Privilege**

The question this issue boils down to is whether DVSI waived attorney-client privilege by including General McKnight on email communications that came from DVSI's counsel. Attorney-client privilege is waived when the client discloses the confidential communications to a third party. *See e.g., United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting *United States v. United States Shoe Machinery Corp.*, 89 F.Supp. 357, 358-59 (Mass. 1950)). No case from the Fourth Circuit, or any circuit for that matter, squarely answers the question posed by these facts. Some similar cases help to provide a framework for the Court to work within.

The Fourth Circuit subscribes to the "classic test" from *United States v. United Show Machinery Corp.*, 89 F.Supp. 357, 358-59 (Mass. 1950), for determining whether the attorney-client privilege applies. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)(per curiam); *see also In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003); *Deel v. Bank of America, N.A.*, 227 F.R.D. 456, 458 (W.D. Va. 2005). One element of that test is that "the privilege has been (a) claimed (b) and *not waived* by the client." *Jones*, 696 F.2d at 1072. The Fourth Circuit test does not address what constitutes waiver in this context, but the Eight Circuit has addressed the issue more closely. In defining waiver, the Eighth Circuit required in its test of attorney-client privilege that "the communication [was] not disseminated beyond those persons who, because of the corporate structure, *need to know its contents*." *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) (en banc) (emphasis added). In a latter case, the Eighth Circuit went further and stated that "[t]his requirement exists as an indication of the intent of the client and the attorney to keep the communication confidential." *In re Bieter Co.*, 16 F.3d 929, 939 (8th Cir. 1994) (citing Weinstein's Evidence ¶ 503(b)[04], at 503-69). Based on the Eighth Circuit's test, the attorney-client privilege is not waived in the corporate context, when the communication is

restricted to those who need to know.

In determining who has a "need to know," the Eighth Circuit laid down the functional equivalency test. *In re Bieter Co.*, 16 F.3d 929, 940 (8th Cir. 1994). In *Bieter*, an independent contractor was deemed to be the functional equivalent of an employee. *Id.* The court found that the contractor had "been involved on a daily basis with the principals of Bieter and on Bieter's behalf in the unsuccessful development that serves as the basis for [the] litigation." *Id.* at 938. Citing to *Upjohn*, the Eighth Circuit held "[t]here is no principled basis to distinguish [the contractor's] role from that of an employee, and his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand Bieter's reasons for seeking representation." *Id.*

Although the Fourth Circuit has not formally adopted the functional equivalence test, a number of courts within the circuit have applied the Eight Circuit's standard. *See e.g., Flo Pac, LLC v. NuTech, LLC,* 2010 WL 5125447, at *8 (D. Md. Dec. 9, 2010); *MLC Automotive, LLC v. Town of Southern Pines*, 2007 WL 128945, at *3-*4 (M.D.N.C. Jan. 11, 2007); *DE Technologies, Inc. v. Dell, Inc.*, 2006 WL 2548203, at *2 (W.D. Va. Sept. 1, 2006). The use of this test is in line with the Fourth Circuit's holding that *Upjohn* analysis is not restricted to only current employees. *See Allen*, 106 F.3d at 606.

This case presents a different question than classic corporate attorney-privilege cases like *Upjohn*, *Allen*, and *Bieter*. Those cases dealt with communications from the client's agent or former agent to the client's counsel, thereby giving counsel information that is pertinent to prepare the case. In this case, the question is whether the privilege applies when the reverse occurs, where counsel gives information and advice to the client and the client's agent or former agent.

The Eighth Circuit's functional equivalence test has been applied in a case such as this

14

where not only was information flowing up to counsel, but also information was flowing from counsel to a client's agent. In *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y 2001), one of the defendants hired a public relations firm to assist with fallout from the litigation. *Id.* at 215. The plaintiffs sought discovery of communications that included the public relations firm, but the Court found that the public relations firm "was the *functional equivalent* of an in-house public relations department with respect to Western media relations, having authority to make decisions and statements on [the defendant's] behalf, and seeking and receiving legal advice from [the defendant's] counsel with respect to the performance of its duties." *Id.* at 215-216 (emphasis added). Based on finding that the public relations firm was the functional equivalent of an in-house department, the court held that "[u]nder the principles set out in *Upjohn*, [the firm's] independent contractor status provides no basis for excluding [the firm's] communications with [the defendant's] counsel from the protection of the attorney-client privilege." *Id.* at 219.

The Court looks to *Diversified Industries, Inc., Bieter*, and *In re Copper Market Antitrust Litigation*, as guideposts to answer the question regarding General McKnight. These cases counsel the Court to ask whether General McKnight had a need to know the information included in counsel's communications with the DVSI Board. The Court finds it appropriate to apply the functional equivalence test in this situation. The test, however, is not whether General McKnight is the functional equivalent of an employee, but of a member of the board of directors.

It may seem out of the ordinary for the Court to consider a person the functional equivalent of a member of the Board of Directors, particularly when the individual was not compensated by DVSI. As the business world changes, however, so must the courts' view on corporate structure. Applying this test in this context follows from the policy dictates of *Upjohn* and its progeny. Similar to communications between counsel and employees, communications between counsel

15

and current members of a Board of Directors are generally protected. *See e.g., Diversified Industries, Inc.*, 572 F.2d at 611 (holding that reports made by counsel to the Board of Directors are privileged). This protection stems from a Board of Director's need to know counsel's advice given that it must make strategic decisions for the company. With this in mind, the Court's December 20, 2012 Order clarified that communications limited to the current Board of Directors and counsel were exempt from production as privileged. ECF No. 550.

As *Upjohn* dictates, the Court must do a factual analysis to determine whether the attorney-client privilege applies to this case. *See* 449 U.S. at 390-391, 396-397. Based on the parties' filings and Plaintiff's proffer, the facts show that General McKnight was a trusted advisor with an on-going role with the Board of Directors. General McKnight had been part of DVSI since its inception and held key knowledge of the enterprise. Although General McKnight resigned from DVSI's Board of Directors sometime before the present litigation commenced, he did so to avoid a conflict of interest and remained involved in DVSI. The email communications reviewed by the Court, appear to support Plaintiff's counsel's representation that General McKnight was a sort of "ex-officio" member of the Board of Directors. He was included in a number of discussions and strategic decisions regarding this litigation. For example, some of the email communications asked that he be part of strategy conference calls. General McKnight was a person who the Board of Directors frequently called upon for advice.

On the other hand, in his deposition, General McKnight stated "I'm not privy to all the—the management of the directors and so forth." McKnight Deposition 31:21-32.3 (ECF No. 574-1). Further, he was not paid by DVSI. This, however, is not sufficient to overcome the fact that he was included in Board of Directors' discussions as if he was a member of the board.

The facts demonstrate that General McKnight was the functional equivalent of a member

16

of the Board of Directors. He had a need to know counsel's advice as he was part of the strategic decision making for DVSI. In *Upjohn*, the Supreme Court noted that Rule 501's "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." 449 U.S. at 389. It is to that end that the Court finds that the attorney-client privilege was not waived when DVSI forwarded those emails to General McKnight. His knowledge and experience served DVSI in its litigation strategy and his inclusion should allow for better preparation of DVSI's counsel.

For these reasons, the Court GRANTS IN PART Plaintiff's motion. Those email communications made available to the Court for *in camera* review not listed in Part III.B.1 are privileged. The Court ORDERS Defendants to destroy any and all copies of the following communications:

| | |
|---|---|
| DVSI122864-DVSI122878 | DVSI120015-DVSI120016 |
| DVSI123049-DVSI123066 | DVSI119124-DVSI119125 |
| DVSI123103-DVSI123105 | DVSI119127-DVSI119131 |
| DVSI122832 | DVSI119917-DVSI119923 |
| DVSI122813-DVSI122815 | DVSI123268-DVSI123273 |
| DVSI122820-DVSI122821 | DVSI123017-DVSI123018 |
| DVSI122812 | DVSI123266-DVSI123267 |

The Clerk shall mail a copy of this Order to all counsel of record.

                                                                        /s/_____
                                                            Tommy E. Miller
                                         United States Magistrate Judge

Norfolk, Virginia
April 12, 2013