**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

DIGITAL VENDING SERVICES
INTERNATIONAL, INC.,

            Plaintiff,

v.                                   ACTION NO. 2:09cv555

THE UNIVERSITY OF PHOENIX, INC., et al,

            Defendants.

## OPINION AND ORDER

This matter comes before the Court on a motion for sanctions against the plaintiff, Digital Vending Services International, Inc (DVSI), and in favor of the defendants, The University of Phoenix, Inc. et al (Defendants). Defendants filed the Motion for Sanctions for Spoliation on June 27, 2013. ECF No. 678. The Motion was referred to the undersigned on July 3, 2013. Based on the evidence presented, the undersigned ORDERS that Defendants' motion be GRANTED and sanctions be imposed. The Court also RECOMMENDS that Judge Arenda Wright Allen consider certain jury instructions as further sanctions.

## I. PROCEDURAL HISTORY

The United States Patent and Trademark Office issued Patent Nos. 6,170,014 ('"014"), 6,282,573 ('"573"), and 6,606,664 ('"664") all entitled "Computer architecture for managing courseware in a shared use operating environment" to inventors Vincent Darago and Christopher Jenkins. ECF Nos. 1-2, 1-3, 1-4. The '014 patent and '573 patent list the Community Learning and Information Network ("CLIN") as "Assignee," (ECF Nos. 1-3, 14), and the '664 patent lists

plaintiff Digital-Vending Services International LLC ("DVSI") as "Assignee" (ECF No. 1-2). DVSI was organized in 2003 by the founding members of CLIN, and although CLIN continues to be a stakeholder of DVSI, it assigned all of its patents, trademarks, software, code, etc. to DVSI in 2003. Pl.'s Compl. 4 (ECF No. 1).

On March 3, 2008, DVSI brought the instant action in the United States District Court for the Eastern District of Texas, alleging patent infringement in violation of federal patent laws. ECF No. 1; 35 U.S.C. § 271. et seq. In its complaint, DVSI alleges that The University of Phoenix, Inc. and Apollo Group, Inc. infringed the '014, '573, and '664 patents. ECF No. 1. The Defendants filed their Answer to Complaint and Counter-claim against DVSI on May 27, 2008. ECF No. 41. The instant case was transferred from the Eastern District of Texas to the United States District Court for the Eastern District of Virginia, Norfolk Division in October 2009 (ECF No. 89), with all previously filed pleadings transferred on November 5, 2009 (ECF No. 91).

Defendants filed the instant Motion for Sanctions for Spoliation on June 27, 2013. ECF No. 678. In it and its accompanying memorandum, they argue that sanctions are necessary because DVSI lost, destroyed or altered two particular sources of information, a thumb drive entitled "Important DVSI Documents," and interviews with Christopher Jenkins and Vincent Darago, the listed inventors of the patents in suit. ECF No. 679. Plaintiffs filed a memorandum in opposition on July 18, 2013, claiming that the thumb drive's contents were on DVSI's servers, and therefore already produced, and that the inventor interviews did not exist. ECF No. 716. Defendants filed a Reply in Support on August 1, 2013. ECF No. 745.

On August 19, 2013, Defendants filed a Motion for Leave to File a Supplemental Memorandum in Support of their Motion for Sanctions for Spoliation (ECF No. 766), which was granted later that day (ECF No. 773). In the following Supplemental Memorandum in Support

2

of their Motion for Sanctions for Spoliation, also filed August 19, Defendants revealed that Plaintiffs found the inventor interviews and disclosed them, along with 1300 other documents, on August 12, 2013. Def.'s Suppl. Mem. 3, ECF No. 774.   Plaintiffs filed an Amended Opposition to Defendant's Motion for Sanctions on August 20, 2013.  ECF No. 780.  The Court heard arguments on this and other motions on August 21, 2013.  ECF No. 784.  Defendants were represented by Michael S. Nadel, Esq., Robert W. McFarland, Esq., Christopher D. Bright, Esq., and Rebecca A. Watson, Esq.  Plaintiff was represented by Michael P. Adams, Esq., William M. Parrish, Esq., and Stephen L. Neal, Esq. The Official Court Reporter was Tami Tichenor. Because the inventor interviews have been found and disclosed at this time, the Court construes Defendants' Motion for Sanctions for Spoliation as a Motion for Sanctions for Failure to Disclose under Federal Rule of Civil Procedure 37(c)(1).

## II. FACTUAL BACKGROUND

Defendants brought two claims in their Motion for Sanctions for Spoliation, one regarding a misplaced thumb drive, and the other regarding interviews with Mr. Darago and Mr. Jenkins.  Both have a complicated, and somewhat overlapping, factual background.

### A. The Thumb Drive

In 2011, the thumb drive referenced in Defendants' motion was in the possession of Mr. Samuel D. Wyman, III, the managing director of DVSI.   Videotaped Decl. of Samuel D. Wyman, III 8, ECF No. 679-3.  During that time, DVSI was having an internal dispute regarding fees, and was searching for a memorandum regarding the percentage owed to a Mr. Clarkson. ECF No. 679-7.  DVSI had a draft unsigned copy of the memorandum on their servers, and Mr.

Wyman, after searching his files, found the signed version[1] on the thumb drive in question, named "Important DVSI Documents."   Videotaped Decl. of Samuel D. Wyman III 8, ECF No. 679-3.   Mr. Wyman sent a copy of the signed Clarkson Memorandum attached to an email, in the body of which he listed the contents of the thumb drive.   ECF No. 679-7.   Those contents included a Folder entitled "Folder 2008" or simply "2008,"[2] two Excel documents entitled "Dilution Model 0805.xls" and "DVSI Status Jan 22 07.xls", and two PDFs entitled "DVSI Balance Sht – 2006.pdf" and "DVSI P&L - 2006".   *Id.*   When he discovered the signed Clarkson Memorandum in 2011, Mr. Wyman did not then turn the thumb drive over to DVSI or to his attorneys.   Videotaped Decl. of Samuel D. Wyman III 9-10, ECF No. 679-3.   Mr. Wyman testified that he did not do so because he believed the thumb drive had already been collected and loaded into the DVSI servers, *id.*, though later in the deposition he stated that he did not know whether this particular thumb drive was collected by DVSI.   *Id.* at 11, 15.   Regardless, the thumb drive in question is now missing. Aug. 21, 2013 Hr'g Tr. 52-53, ECF No. 801.

The existence of the thumb drive first came to the notice of Defendants when the Court compelled production of non-privileged e-mails, one of which was from Mr. Wyman regarding his discovery of the signed Clarkson Memorandum. Aug. 21, 2013 Hr'g Tr. 52, ECF No. 801. During the hearing, Defendants called Wendy Axlerod as an expert in electronic discovery. *Id.* at 116-117.   Ms. Axelrod testified that, after extensive testing using metadata and Optical Text Recognition (OCR) searches, in her opinion, a signed copy of the Clarkson memorandum, other than the one sent by Mr. Wyman in 2011, was not contained in DVSI's files.   *Id.* at 124. According to Mr. Wyman, the other five documents contained within the file were on DVSI's

---

[1] The signed version of the Clarkson Memorandum can be found at ECF No. 716-7.
[2] In Mr. Wyman's email he refers to it as "Folder 2008," however, in his declaration (ECF No. 716-1) he refers to the folder simply as "2008," and stated that his convention for naming folders was to name them after the year in which the contents occurred.  Wyman Decl. 5.

servers and were produced to the Defendants.  Wyman Decl. 4-5, ECF No. 716-1.  Defendants argue that there could be a number of documents contained within the folder entitled either "Folder 2008" or "2008," which may have substantial effect on the litigation, and because one previously unproduced document was contained on the thumb drive, there are potentially many more.

### B. Inventor Interviews and Other Documents

In order to fully understand the issues raised by the Defendants, one must go all the way back to the beginning of the litigation.  On November 13, 2009, Walden University, LLC, a former defendant in this case, issued subpoenas to a number of DVSI members and shareholders, including Mr. James Henderson.[3]  ECF No. 767-2, Henderson Dep. 62, ECF No. 786-2.  That same day, Mr. Henderson sent an email to Mr. Geoffrey Joseph, CEO of DVSI, asking how he should "respond after the suspense date if [he was] contacted by the court for failure to appear," indicating he intended not to appear.  ECF No. 776-3.  He also asked "What is our [DVSI's] reason for ignoring this court subpoena?"  *Id.*  In reply, Mr. Joseph sent him language to respond to the subpoena.  Henderson Dep. 62, ECF No. 786-2.  Mr. Henderson used that language to draft a letter clearly stating that he would not produce documents, because he did not have any responsive documents in his possession.  Henderson Letter, ECF No. 767-3.  Mr. Henderson did have responsive documents, but he believed the documents he possessed were all duplicates of documents already on the DVSI servers or in DVSI files, and had interpreted the subpoena to mean that it was asking only if he had original or unique documents.  Henderson Dep. 64, 67, ECF No. 786-2.  On December 9, 2009, pursuant to a transfer order, this Court ordered Walden to withdraw all subpoenas, and no further subpoena was issued to Mr. Henderson.  ECF No. 132.

---

[3] At the August 21, 2013 hearing, Mr. Nadel stated that Defendants had been working as a defense group, and divided up which defendant would subpoena whom, with the understanding that all would receive a distribution of the responses.  Aug. 21, 2013 Hr'g Tr. 197, ECF No. 801.

In May of 2010, Walden was dismissed as a party to the litigation.  ECF No. 263.

From 2003 to 2006, Mr. Joseph continuously edited and updated a chronology of CLIN's creation process of the patents in suit.  Joseph Decl. 3, ECF No. 716-15, Chronology, ECF No. 679-1.  In the entry for "Jan-Dec. 1996," Mr. Joseph made reference to inventor interviews that took place, and included a quotation allegedly from Mr. Darago's interview.  Chronology 2, ECF No. 679-1.  Mr. Joseph testified later that it is his practice, when including something in quotation marks, to be quoting either directly from a person or from a document.  Video Dep. of Jeff Joseph 9, ECF No. 679-2.  However, when questioned about the inventor interviews, DVSI employees had no recollection of one taking place; Mr. Joseph and Mr. Wyman said they did not recall interviews.   Joseph Decl. 5, ECF No. 716-15; Wyman Decl. 6-7, ECF No. 716-1.  Furthermore, the inventors themselves do not recall being interviewed.  Darago Decl. 3, ECF No. 716-16; Jenkins Decl. 3, ECF No. 716-17.  Mr. Joseph specifically stated in a declaration, "(1) that CLIN/DVSI had no knowledge of any recorded inventor interviews and (2) CLIN/DVSI was never in possession of any recorded inventor interviews."  Joseph Decl. 7, ECF No. 716-15.  This led DVSI, in its pleadings, to claim that "there are no recorded interviews with the inventors." Pl.'s Opp. To Def.'s Mot. For Sanctions 15, ECF No. 716.

However, after DVSI claimed the inventor interviews did not exist, Mr. Joseph continued to pursue them.  He spoke with Mr. Henderson, and asked him to re-check his files for the inventor interviews.  Henderson Dep. 8-9, ECF No. 786-2.  Mr. Henderson first stated that Mr. Joseph knew the interviews had occurred, *id.* at 9, but later revised himself to say that Mr. Joseph did not recall them but wanted to follow up anyway, *id*. at 82-83.  Regardless, Mr. Henderson found the inventor interviews on back-up CDs in his attic, along with thousands of other documents.  *Id.* at 10-11.  Mr. Joseph submitted another declaration in which he explained his

continued pursuit and eventual uncovering of these inventor interviews.[4]  Joseph Decl. 13, ECF No. 778-2.  The interview with Mr. Darago contained the language Mr. Joseph quoted in his chronology.  *See* Prot. Intellectual Prop. 19, ECF No. 776-1; Chronology 2, ECF No. 679-1. Plaintiffs disclosed those documents to the Defendants on August 12, 2013.  Def's Supp. Memo. 3, ECF No. 774.  The interviews with the inventors were to distinguish the work DVSI was doing on a metering system "from a metering system that was produced and promoted by Mr. Jack Taub."  Aug. 21, 2013 Hr'g Tr. 97, ECF No. 801.  Jack Taub died in 2011.  *Id.* at 49.

At the August 21 hearing, Defendants stated they had received approximately 1300 documents and that after analyzing 900 of them by the hearing date, they "recognize[d] hardly any of them."  Aug. 21, 2013 Hr'g Tr. 48, ECF No. 801.  On September 4, 2013, Defendants submitted a letter stating that Plaintiff had produced an additional 6095 individual documents, for a total of 7,432 new documents comprising 21,973 pages.  ECF No. 816.  Based on Defendants' cursory review of the metadata, only thirteen of the documents had been previously produced in the same form.  *Id.*

### III. ANALYSIS

#### A. Spoliation

The Court has broad powers to sanction spoliators, both to level the playing field and to impose sanctions on wrongdoers.  *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir. 1995). These broad powers should be exercised with restraint, and dismissal should be avoided if other sanctions can achieve the necessary goals.  *See Silvestri v. General Motors Corp.*, 271 F.3d

---

[4] Mr. Joseph was called to testify during the August 21, 2013 hearing regarding his involvement in the discovery of the inventor interviews.  The Court advised Mr. Joseph of his Fifth Amendment rights, since he had submitted two declarations under oath with conflicting contents.  After consultation with DVSI's counsel, Mr. Joseph availed himself of his Fifth Amendment right, declined to testify, and sought independent counsel.  Aug. 21, 2013 Hr'g Tr., ECF No. 801.

583, 59- (4th Cir. 2001), *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 518 (D.Md. 2010).

While the Eastern District has endorsed the maxim that "all things are presumed against a spoliator or wrongdoer," *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 284 (E.D. Va. 2001), the burden to prove spoliation rests on the party seeking sanctions. *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 505 (D.Md. 2009). That party must prove the following elements: "(1) The party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the missing evidence would have supported the claims or defenses of the party that sought it." *Id.* at 505-06, *quoting Thompson v. U.S. Dep't of Hous. and Urban Dev.*, 219 F.R.D. 93, 101 (D.Md. 2003) (quotations and brackets omitted).

In this case, the Defendants seeking sanctions did not adequately make a prima facie case. Defendants initially sought sanctions for spoliation of interviews with the patent in suit's inventors, Christopher Jenkins and Vincent Darago, and of a thumb drive entitled "Important DVSI documents." The spoliation of inventor interviews raised in Defendants' motions has been mooted, because the interview transcripts have been produced.[5] Thus, the only issue currently before the court regarding spoliation is the "Important DVSI Documents" thumb drive. It is undisputed by the parties that the thumb drive is gone; the only question at issue is whether its loss is sanctionable under the spoliation doctrine. Aug. 21, 2013 Hr'g Tr. 52-53, ECF No. 801. Defendants have not proven that the loss or destruction of the thumb drive rises to the level of

---

[5] However, the extreme lateness in the production of these interviews, along with several thousand other documents, will be addressed below.

8

spoliation.

In this case, the plaintiff had a duty to preserve the thumb drive.  The duty to preserve does not extend to every document the company possesses, only to "unique, relevant evidence." *Victor Stanley, Inc.,* 269 F.R.D. at 524, *quoting Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003).  The duty to preserve is also defined by whether steps taken to preserve are proportional to the particular case and "consistent with clearly established applicable standards." *Id.* at 518, *quoting Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D.Tex. 2010) (quotation marks omitted).  The thumb drive fits both of these standards.  Plaintiffs argue that everything on the thumb drive was produced in discovery, and thus the information contained on the thumb drive is not unique; however, Defendants have shown that at least one document, the signed Clarkson memorandum, was contained on the thumb drive and nowhere else.  Aug. 21, 2013 Hr'g Tr. 124, ECF No. 801.  Thus, the thumb drive did contain unique, potentially relevant evidence that was not obtainable from any other source.  Additionally, the preservation of the thumb drive is proportional to the scale of the litigation in this case.  This litigation is asking for a significant amount in damages, has been ongoing for the past five years, and was anticipated for at least a decade.  Video Decl. of Jeff Joseph 34-36.  The duty to preserve "also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591.  Because of this, DVSI should have been prepared to preserve all unique evidence for at least the past five years, if not longer.  The scope of this litigation is such that the duty to preserve is proportionally very high.  The evidence on the thumb drive was unique, and the duty to preserve it was proportional to the particular case.

Additionally, the documents or items at issue must be under the control of DVSI, in order

to fall under the duty to preserve.  The ability to control is defined by the Fourth Circuit as "when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Goodman*, 632 F. Supp. 2d at 515, *quoting In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (quotation marks omitted).  Under this definition, DVSI had control over the thumb drive when it went missing; Mr. Wyman, the managing director of DVSI, had possession of it.  Although it was in Mr. Wyman's personal possession, DVSI had the authority and ability to ask Mr. Wyman to preserve the documents in his possession.  Thus, DVSI had control over the thumb drive, and was under an obligation to preserve it.

While Defendants meet the first prong of the spoliation test, they have failed to prove the other elements required in a prima facie case.  They have not shown that DVSI had the requisite mental state required for the sanctions they are requesting.  In the Fourth Circuit, a culpable state of mind sufficient to support a spoliation finding includes any level of fault, "whether it is bad faith, willfulness, gross negligence, or ordinary negligence . . . ." *E.I. Du Pont de Nemours & Co. v. Kolon Indus.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011).  The sanctions available differ with the level of fault; for instance, the imposition of an adverse inference requires a finding of willfulness or bad faith.  *Id*. at 509; *see also Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 820 (E.D.N.C. 2008) ("[N]egligent destruction is not sufficient to support an adverse inference instruction.").  Gross negligence "differs from ordinary negligence only in degree, and not in kind." *Victor Stanley, Inc.*, 269 F.R.D. at 529.  Willfulness is "intentional, purposeful, or deliberate conduct" that leads to the destruction or alteration of evidence; to prove willfulness, it is enough to show that the actor intended to destroy the evidence.  *Id*. at 530, *see also Powell*, 591 F. Supp. 2d at 820.  Bad faith requires not only a showing of willful destruction or alteration; it requires "destruction for the purpose of depriving the adversary of the evidence." *Powell*, 591

F. Supp. 2d at 820.   In this case, Defendants have offered no evidence that the thumb drive destruction or loss was accompanied by a culpable state of mind.   The Plaintiffs simply stated that Mr. Wyman did not know where the thumb drive went. Aug. 21, 2013 Hr'g Tr. 52-53, ECF No. 801.   Defendants have offered no evidence to show an alternative mental state.   Plaintiff's proffer that Mr. Wyman simply lost the thumb drive, without more, does not demonstrate willful destruction, and certainly does not demonstrate destruction for the purpose of depriving Defendants of the evidence.   At most Defendants have demonstrated that DVSI conducted themselves with gross negligence, possibly even ordinary negligence.   While negligence is considered a culpable state of mind under Fourth Circuit precedent, it does not allow for the types of sanctions for which the Defendants are asking.

Even though negligence and gross negligence are still considered culpable mental states, Defendants still do not meet their burden to show a prima facie case; most importantly, Defendants have failed to prove that the evidence on the thumb drive was relevant to their claims or defenses.   Relevancy is determined by whether a reasonable factfinder could conclude that the spoliated evidence "would have supported the claims or defenses of the party that sought it." *Thompson*, 219 F.R.D. at 101.   It is a standard more substantial than that required to satisfy Rule 401 of the Federal Rules of Evidence.   *Victor Stanley, Inc.*, 269 F.R.D. at 531.   Additionally, relevancy must be proven "by offering probative evidence, not the hyperbole of argument." *E.I. Du Pont*, 803 F. Supp. 2d at 498.   In this case, Defendants have not met that standard.   Not only have they failed to prove the potential evidence on the thumb drive was relevant, they have not proven that there was any additional evidence on the thumb drive at all.   Wyman Decl. 4-5, ECF No. 716-1 (stating that the other five documents on the thumb drive were disclosed during discovery).   Defendants successfully proved that the signed Clarkson memorandum was

contained on the thumb drive and nowhere else, but have only offered speculation regarding the rest of the thumb drive's contents.  Since there is no definitive proof of the thumb drive's contents, Defendants cannot show that its contents are relevant to their claims or defenses. While it is true that in cases where the party seeking sanctions can prove the destruction was willful then "the relevance of that evidence is presumed by the Fourth Circuit," that standard does not apply here.  *Victor Stanley, Inc.*, 269 F.R.D. at 532.  The Defendants have not proven that DVSI acted willfully or in bad faith, and "negligent or even grossly negligent conduct is not sufficient to give rise to the presumption."  *Id.*  Without evidence of intentional loss or destruction of potential evidence, the party must prove relevancy of the missing documents.  *Id.* Defendants here have failed to prove intentional destruction and relevancy, and thus fail to meet a prima facie case for spoliation sanctions.

## B. Failure to Disclose

Although the loss of the thumb drive does not rise to the level of sanctionable spoliation, the Court is seriously concerned by DVSI's recent disclosure of over seven thousand new documents, including inventor interviews that DVSI previously insisted did not exist. *Contrast* Letter (ECF No. 816) *with* Pl.'s Opp. To Def.'s Mot. For Sanctions 15, ECF No. 716.  Because these documents were produced outside of the discovery period and in an untimely manner, the Court must address this rather unorthodox situation.

The Court takes special exception to the late disclosure of interviews with Christopher Jenkins and Vincent Darago, the inventors of the patent in question.  The inconsistencies in DVSI's positions regarding these interviews are overwhelming.   Multiple people, including the inventors and the interviewer, say they do not recall the interviews having happened.  Darago Decl. 3, ECF No. 716-16; Jenkins Decl. 3, ECF No. 716-17; Joseph Decl. 5, ECF No. 716-15;

Wyman Decl. 6-7, ECF No. 716-1.   However, in Mr. Joseph's chronology, he had a direct quote of something one of the inventors said, and Mr. Joseph testified that when he puts quotation marks around something in his writing, it is his practice that the information therein is a direct quote from some document.   Video Dep. of Jeff Joseph 9, ECF No. 679-2.   Then Mr. Joseph testified that the chronology was flawed, and little weight should be given to it.   Joseph Decl. 3-4, ECF No. 716-15.   DVSI argued before this court that the inventor interviews did not exist. Pl.'s Opp. To Def.'s Mot. For Sanctions 15, ECF No. 716.   And yet, Mr. Joseph continued to search for these supposedly nonexistent interviews, possibly even telling Mr. Henderson that he thought he remembered them happening.   Henderson Dep. 9, ECF No. 786-2.   And even after the interviews' production, DVSI argued to this court that they had no relevance to the case, an erroneous argument at best.   Regardless, these interviews were produced far after they were asked for, and at a time when part of their usefulness was negated because of the death of Jack Taub.   Had the interviews been produced in 2009 or 2010, Defendants would have been able to depose Jack Taub about his invention, which may reveal evidence about whether Jenkins and Darago are indeed the inventors of the patents in suit; however, because Jack Taub died in 2011, that opportunity for deposition is lost.   DVSI's untimely disclosure of these interviews, coupled with the untimely disclosure of thousands of other documents, require this court to seriously address their actions.

DVSI's actions are best categorized as falling under Rule 37(c)(1) of the Federal Rules of Civil Procedure, which requires the imposition of sanctions for failure to disclose information under Rule 26(a) or (e).   Fed. R. Civ. P. 37(c)(1).   Rule 26(a) outlines mandatory disclosures of both parties.   Rule 26(e), in relevant part, requires that parties timely supplement or correct information disclosed to the opposing party through mandatory disclosures outlined in 26(a) or

responses to interrogatories, requests for production, and requests for admissions, if and when the party learns their previous disclosures were materially incorrect or incomplete. Fed. R. Civ. P. 26(e)(1). Rule 37(c)(1) outlines two exceptions to the requirement of sanctions, if the failure to disclose was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).

DVSI's untimely disclosures fall under the standard put forth in Rule 26(e). DVSI claims that they turned over the volumes of information from Mr. Henderson as soon as they received it, and so timely supplemented their discovery. Aug. 21, 2013 Hr'g Tr. 68-69, ECF No. 801. However, the Court finds that the disclosure of that information was not timely, given the breadth of this case and, more importantly, Mr. Henderson's failure to respond to an earlier subpoena. The mission of DVSI is to own intellectual property, to license that property, and to seek legal action against those who DVSI contends infringe on its property. Video Dep. of Jeff Joseph 34-36. This case, on its own, has lasted five years and was contemplated for a number of years before that. *Id.* Because parties have an obligation to preserve relevant information in anticipation of litigation, *Silvestri*, 271 F.3d at 591, all of the information contained on Mr. Henderson's backup drives should have been preserved as soon as DVSI determined its mission was to enforce its patents. Indeed, Mr. Henderson was surprised that information was not already contained in DVSI's files. Henderson Dep. 68, ECF No. 786-2. DVSI has not provided an adequate explanation as to why this information was not preserved; while at the hearing there were casual references to the possibility of file corruption, Plaintiffs did not produce any direct evidence of this. Aug. 21, 2013 Hr'g Tr. 61, 90, 124-28, 182, ECF No. 801. Had DVSI properly preserved their information in anticipation of litigation, these documents, including the inventor interviews, would have been in the hands of the Defendants four years ago, rather than several months after discovery is closed and three months before trial is scheduled to go forward.

14

Indeed, even if the information had been lost from DVSI servers through no fault of the Plaintiff, it should have been discovered via the subpoena handed down to Mr. Henderson by the Defendants in 2009.   Subpoena, ECF No. 767-2.   Instead of responding to the subpoena, however, Mr. Henderson collaborated with Mr. Joseph to craft a letter denying any ownership of or possession of documents, even though he knew he had backed up copies of documents in his possession.   Henderson Dep. 62, ECF No. 786-2.   This subpoena was eventually withdrawn. Aug. 21, 2013 Hr'g Tr. 192, ECF No. 801.   Had the subpoena been properly responded to, these 7,000 documents would have been disclosed during the course of regular discovery, and not three months before trial.   Mr. Henderson and Mr. Joseph worked together to subvert a subpoena that would have revealed this trove of documents; thus, DVSI cannot hide behind a claim of timely supplementation.   Plaintiffs violated Rule 26(e), and are therefore subject to Rule 37(c)(1) sanctions.

This late disclosure is neither substantially justified nor harmless, which would allow Plaintiffs safe harbor from 37(c)(1) sanctions.   Fed. R. Civ. P. 37(c)(1).   DVSI's excuse for its untimely disclosures, that they assumed that everything was on the server, does not justify the lack of disclosure.   Aug. 21, 2013 Hr'g Tr. 62, ECF No. 801.   There was no substantial barrier to obtaining this information.   The documents were in possession of a current DVSI shareholder, and easily obtainable through reasonable inquiry.   Additionally, this is far from harmless; it requires at the very least a significant review of seven thousand or more documents to ensure they have or have not already been disclosed.   At least two of the documents disclosed, the inventor interviews, are material information.   DVSI cannot take refuge in Rule 37(c)(1)'s safe harbor provision.

The Fourth Circuit outlines a test for Rule 37(c)(1) sanctions in *Southern States Rack &*

*Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003), which balances the difficulty and surprise late disclosures present against the nondisclosing party's reasons for its failure to disclose. Under this test, the Court looks at: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Id.* at 597. Not every factor must be expressly considered by the district court. *See Hoyle v. Freightliner LLC*, 650 F.3d 321, 330 (4th Cir. 2011); *Mayor and City Council of Baltimore v. Unisys Corp.*, No. JKB–12–cv–614, 2013 WL 4784118, *4 (D.Md. Sept. 5, 2013).

The *Southern States* test is the best test available for this situation, even though the sheer volume of documents prevents the Court from determining against whom the evidence may be offered. Regardless, Defendants in this case were certainly surprised by the material, since it was disclosed far after discovery had closed and only days before a hearing on their spoliation motion. By the time of said hearing, Defendants had received approximately 1300 documents; they indicated during that hearing that after analyzing 900 of them by the hearing date, they "recognize[d] hardly any of them." Aug. 21, 2013 Hr'g Tr. 48, ECF No. 801. The September 4, 2013 letter indicated that Plaintiffs disclosed another 6095 individual documents, for a total of 7,432 new documents, and that based on Defendants' cursory review, only thirteen of the documents had been previously produced in the same form.[6] Letter, ECF No. 816. Thus, even though it is too soon to tell which party these documents favor, and against whom they are likely to be offered, their production certainly caused a great deal of surprise to the Defendants and, indeed, the Court.

---

[6] This letter is most certainly not the final discussion on these documents, which are likely still under review to determine their relevance and their potential repetition.

16

The only remedy to cure this surprise, the Defendants believe, is to engage in substantial new discovery. The parties do not have the ability to cure it in a less labor-intensive fashion; in order to fully understand how these recent disclosures impact the current suit, Defendants would have to at the very least review all the documents and take further deposition testimony from multiple parties, including the inventors, Plaintiff's 30(b)(6) witnesses, and others who have previously been deposed. At most, the Defendants would have to engage in repetitious and duplicative discovery procedures, in order to incorporate new information from these documents. The Court agrees that the only way to completely cure the surprise of these documents would be to allow for additional time to review them and incorporate any new information, which would require a continuance of the case, on top of substantial expenditures of money and time. Such a continuance request must be addressed to Judge Allen, and since no continuance has been granted at this time, the Court's sanctions seek to diminish the harm to Defendants by DVSI's actions.

There is no question that the production of these documents will disrupt the trial. As stated above, if the documents are allowed to be used, at the very least the trial date must be pushed back significantly to allow for the incorporation of these documents and their information into the trial process. If the documents were allowed as-is without additional time to prepare, the trial would be significantly disrupted. Defendants would not be able to use the documents as effectively in cross-examination, because they were not able to question witnesses about them in pretrial depositions. Every outcome of this late disclosure disrupts the trial significantly.

The importance of the evidence, much like the surprise caused to the party against whom the documents are offered, is difficult to calculate, given the thousands of documents that must be examined in order to determine their importance. Because the Defendants have not finished

their review of the documents, the full scope of their importance is unclear.  However, late disclosure of the inventor interviews appears to be of critical importance.  It is clear from the content of these interviews that the inventors and investors were trying to show a distinction between their product and a product produced by Jack Taub, which may have a significant impact on the patent in suit.  DVSI's failure to produce these interviews in ordinary discovery as required in 2009 or 2010 prevented the Defendants from deposing Jack Taub, who passed away in 2011.  That deposition may have invalidated the patent.  Thus, the inventor interviews were and continue to be critically important to this case, and their late disclosure prejudices Defendants.

The fifth prong of this test, the reason for failing to disclose, was designed to balance any surprise with reasons why the information could not be obtained before now.  However, this prong also weighs significantly against DVSI.  The reasons they provided for failing to disclose the inventor interviews and thousands of other documents are unbelievable, and may rise to the level of perjury.  As stated above, the entire mission of DVSI is to manage and protect intellectual property, which means that from its creation, DVSI was anticipating litigation.  Video Dep. of Jeff Joseph 34-36.To this end, it has employed lawyers from the beginning of its existence and during the existence of CLIN, the patent's former holder; DVSI's current attorneys have been assigned to this case since 2009.  *See* ECF Nos. 1, 3, 4, 93-99.  The Court is well aware that DVSI was prepared to pursue aggressive litigation to defend the patent in suit.  Because of this, the Court cannot and does not believe that DVSI and its officers were not fully advised of the need to preserve evidence in anticipation of litigation, and to produce that evidence during discovery.  *Silvestri*, 271 F.3d at 591.  DVSI has been sanctioned twice for discovery violations.  *See* Order Gr. Mot. to Compel, ECF No. 232; Order Gr. in Part Mot. for

Order Prohibiting Pl. from Opp. Def.'s Invalidity Claims, ECF No. 652.  And yet, after the close of discovery and three months before trial, DVSI produces thousands of documents.  Given DVSI's mission and its conduct, the Court simply cannot allow it to state that it "did everything [it] could to try and make right."  Aug. 21, 2013 Hr'g Tr. 68-69, ECF No. 801.

As discussed above, DVSI should have had this information on its drives already, and if not, the information should have been uncovered by the subpoena given to Mr. Henderson. Instead, Mr. Henderson went straight to Mr. Joseph to ask how he could ignore the subpoena. ECF No. 776-3.  Mr. Joseph, or someone in his office, then crafted boilerplate language for Mr. Henderson and others to respond to their subpoenas, in order to prevent factfinding by the Defendants.  Henderson Dep. 62, ECF No. 786-2.  Mr. Henderson even said he chose to respond that he had no documents relating to the litigation, even though he knew that he did, because he believed them to be duplicative.  Henderson Letter, ECF No. 767-3.  Clearly they were not.  Mr. Joseph and Mr. Henderson attempted to subvert the discovery process, rather than allowing for the disclosure of significant documents.  Additionally, Mr. Joseph, after stating clearly that the inventor interviews did not exist, continued to pursue them, possibly telling Mr. Henderson that he believed they possibly did exist.  Henderson Dep. 8-9, ECF No. 786-2.  Mr. Joseph's actions and testimony showed an overall lack of concern about the integrity of the discovery process. Because the statements of DVSI's agents are inherently unreliable, their stated reasons for failing to disclose are unacceptable.  DVSI's failure to disclose seems only to amount to DVSI's not wanting to comply with reasonable discovery, or possibly in order to gain a strategic advantage; certainly it was not what they said, that they turned over the information as soon as they knew it existed, and that they are victims in this scenario too.

**IV. ORDER**

The *Southern States* test weighs almost completely in favor of the Defendants, and the places it does not are attributable to confusion due to the sheer volume of documents recently produced.  Because of that, this Court finds that DVSI should be subject to Rule 37(c)(1) sanctions.  Rule 37(c)(1) allows for sanctions to be imposed in the form of disallowing the use of the late-disclosed evidence, requiring payment of reasonable expenses and attorney's fees, informing the jury of the party's failure to disclose, or any other sanctions listed in Rule 37(b)(2)(A)(i)-(vi).  Fed. R. Civ. P. 37(c)(1).  As such, the Court ORDERS the following sanctions:

1. DVSI is prohibited from using any unique documents that were part of the late disclosure, including the inventor interviews, to supply evidence on a motion, at a hearing, or at trial;[7]

2. DVSI is ordered to pay all reasonable expenses, including attorney's fees of the Defendants, in preparing the briefs filed regarding the motion for sanctions, in preparation for and attendance at the hearing, and in reviewing the late disclosed documents; Defendants must submit any monetary requests by October 23, 2013; and

3. Defendants are permitted to reinstate their defense for inequitable conduct if they so choose, by October 23, 2013.

**V. ADDITIONAL RECOMMENDED SANCTIONS**

The undersigned is not the trial judge, but RECOMMENDS that District Judge Arenda Wright Allen consider instructing the jury in the following manner:

---

[7] This does not prevent the Defendants from using the documents in any manner they deem  necessary.

1. Before and after each of the inventors, investors, officers, directors or employees of DVSI testifies, either in person or by deposition, the judge should instruct the jury that DVSI engaged in discovery abuses which hinder the ability of the Defendants to fully cross-examine witnesses; and

2. The above instruction, or one similar, should be given to the jury before it deliberates.

The Clerk shall mail a copy of this Order to all counsel of record.


_____/s/_____

Tommy E. Miller
United States Magistrate Judge


Norfolk, Virginia
October 3, 2013